## DAVID J. KENNEDY

*v.*

## FRANCIS J. LEMOYNE.

*Opinion filed December 20, 1900.*

1. RELIGIOUS CORPORATIONS—*special act of 1853, relating to Protestant Episcopal Church, is in force.* The special act of February 21, 1861, in so far as it attempts, by section 5, to repeal the special act of 1853, authorizing persons holding title in trust for the Protestant Episcopal Church in Illinois to convey the same, is void, as in violation of section 23 of article 3 of the constitution of 1848, which provides that private laws shall not embrace more than one subject, which shall be expressed in the title.

2. SAME—*trustees of the Protestant Episcopal Church for Chicago diocese may act under laws of 1849 and 1861.* The trustees of the Protestant Episcopal Church elected and chosen by the diocese of Chicago are authorized to accept and make conveyances for the uses and purposes mentioned in the private acts of 1849 and 1861, and the bishop of the diocese of Chicago, as the successor of the bishop of the diocese of Illinois, may take, hold or convey property for the uses and purposes expressed in the private act of 1853.

MAGRUDER, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

WILLIAM R. BURLEIGH, for appellant.

W. A. MCLAREN, (SHOPE, MATHIS & BARRETT, of counsel), for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery by the vendor to enforce the specific performance of a contract for the sale of lots 12, 13 and 14 in block 8, in Street's addition to Downer's Grove, DuPage county, Illinois, entered into on the third day of April, 1897, between Francis J. LeMoyne and David J. Kennedy. The case was tried upon bill and answer. The circuit court granted the relief prayed for and the defendant has prosecuted this appeal.

The appellee deraigns title through the bishop of the Protestant Episcopal Church in the diocese of Chicago and the trustees of the Protestant Episcopal Church in the diocese of Illinois.

The answer admits the execution of the contract, the tender of a deed, the refusal of the appellant to accept the same and pay the purchase price of said lots; that on the second day of December, 1895, William D. C. Street was seized in fee simple of the lots, and on that day conveyed the same, by warranty deed, to the bishop of the Protestant Episcopal Church in the diocese of Chicago; that on the 24th day of April, 1896, the bishop of the Protestant Episcopal Church in the diocese of Chicago conveyed the same, by warranty deed, to the trustees of the Protestant Episcopal Church in the diocese of Illinois, and on the 25th day of December, 1896, the trustees of the Protestant Episcopal Church in the diocese of Illinois conveyed the same, by warranty deed, to the appellee; and avers that the appellee was at the time of the making of the contract and of the tender of the deed, and still is, unable to perform said contract and make a good title to said lots for want of title thereto in himself.

On the 24th day of January, 1853, the General Assembly of the State of Illinois passed an act entitled "An act authorizing certain persons holding property in trust for the use of the Protestant Episcopal Church in the State of Illinois to convey the same," and provided therein, among other things: "That all gifts, grants, deeds, wills and other conveyances wherein or whereby any lands, tenements or other property within this State have been given, devised or granted or in any manner conveyed by any person or persons whatever, unto any person by the name, style or title of Bishop of the Protestant Episcopal Church in the State or diocese of Illinois, or Bishop of Illinois, and his successors, or to any other person, upon the trust, expressed or implied, to take, hold and receive the same for the use and benefit of any religious

congregation of Protestant Episcopalians, or for the support, aid or maintenance of the cathedral church, of any hospital, almshouse, seminary, church, parsonage, or for burial grounds, or other religious or charitable purposes within this State; and all such gifts, grants, deeds, wills and other conveyances which may hereafter be made, are hereby confirmed and declared to be good, sufficient and effectual, in law, to vest the legal title and estate in fee simple of, in and to the said lands and tenements and other property in such grantee or devisee, and in such persons as shall be in the future the successors of the said bishop of Illinois, forever." Before that time, viz., on the 10th day of February, 1849, the General Assembly of the State of Illinois had passed an act entitled "An act to authorize the Protestant Episcopal Church in the State of Illinois to raise a fund for the support of a bishop, and to aid superannuated ministers and the widows and children of deceased ministers," by which act there was created a body corporate known as the "Trustees of the Protestant Episcopal Church in the Diocese of Illinois," with authority to receive and to hold in trust funds to the extent of $100,000 for the purposes expressed in the title of said act; and on the 21st day of February, 1861, the General Assembly of the State of Illinois passed an act entitled "An act amendatory of an act entitled 'An act to authorize the Protestant Episcopal Church in the State of Illinois to raise a fund for the support of a bishop, and to aid superannuated ministers and the widows and children of deceased ministers,' approved February 10, 1849," by section 1 of which act the uses of the act of February 10, 1849, are increased, as follows: "Or for the establishment, erection, support, aid or maintenance of any hospital, almshouse, seminary, church, parsonage or burial ground, or for the furtherance and promotion of these and other charitable, religious, literary or eleemosynary purposes connected with the said Protestant Episcopal Church in the diocese of Illinois."

188—17

Section 2 provides, if the proper authorities fail to appoint trustees the acting trustees shall continue in office until the appointment of their successors. Section 3 increases the value of the trust to $200,000 for the support of a bishop, superannuated ministers and the widows and children of deceased ministers, and to the sum of $500,000 for other purposes. Section 4 declares the act of 1861 to be an amendment to the act of 1849, and section 5 declares that the act of 1853, hereinbefore referred to, is thereby repealed.

It is contended by appellant that the act of January 24, 1853, which is relied upon by appellee as authority for the bishop in the diocese of Illinois and his successors to accept and make conveyances for the uses and purposes contained in said act, was repealed by the fifth section of the act of February 21, 1861, and that the powers given to said bishop and to his successors by the act of January 24, 1853, to take and hold title to property for the uses therein expressed, was withdrawn and taken away, and that said bishop or his successors did not have the power to take title to said property or to convey the same to the trustees of the Protestant Episcopal Church in the diocese of Illinois, and that the appellee is therefore not seized of, and is unable to convey title to, the lots embraced in the contract which he asks to have specifically enforced. If the act of 1853 was repealed by the act of 1861, as the title to the property in question was conveyed to said bishop subsequent to the passage of the act of 1861, it may be conceded the position of appellant is correct. If, however, said act was not repealed the contention of appellant cannot be sustained.

Section 23 of article 3 of the constitution of Illinois of 1848 provides: "No private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." The act of 1861 is a private act. It consists of two distinct parts: that which is embraced in its title,

viz., "An act amendatory of an act entitled 'An act to
authorize the Protestant Episcopal Church in the State
of Illinois to raise a fund for the support of a bishop, and
to aid superannuated ministers and the widows and chil-
dren of deceased ministers,' approved February 10, 1849,"
and that part contained in section 5 which purports to
repeal the act of 1853. Said act therefore clearly em-
braces more than one subject,—the amendment of the act
of 1849 and the repeal of the act of 1853,—only one of
which subjects, the amendment of the act of 1849, is ex-
pressed in the title thereof.

In our opinion the repeal of the act of 1853 was not
germain or pertinent to the subject matter contained in
the act of 1849 and cannot be regarded as an amendment
thereto, but must be regarded as independent legislation
upon a matter not embraced in the title to the act of 1861,
and therefore void. Sections 1 to 4, inclusive, of the act
of 1861 are distinct subjects of legislation from section 5
of said act. The title of the act in no way refers to
the bishop or his powers. The act of 1861, so far as it
attempts by section 5 to repeal the law of 1853, being
clearly in violation of section 23 of article 3 of the con-
stitution of 1848, is unconstitutional and void, and said
bishop and his successors still retain and may lawfully
exercise all of the powers conferred upon them under
and by virtue of the act of 1853. It therefore follows
that the title conveyed by Street to the bishop of the
Protestant Episcopal Church in the diocese of Chicago,
who is the successor to the bishop in the diocese of Illi-
nois, vested and was conveyed by such bishop to the
trustees of the Protestant Episcopal Church in the dio-
cese of Illinois.

It is further contended by appellant that the trustees
of the corporation, known as "Trustees of the Protestant
Episcopal Church in the Diocese of Illinois," were not
legally elected and could not legally convey the title of
said lots to appellee. It is admitted by appellant that

the diocese of Illinois was by authority of said church divided into the dioceses of Chicago, Springfield and Quincy, with certain and defined boundaries, and that the bishop in the diocese of Illinois, in accordance with the rules and regulations of said church, became the bishop in the diocese of Chicago, and that the diocese of Chicago at each annual convention of the church, as the parent diocese, has elected trustees who have acted as and claim to be the trustees of said corporation. It is, however, insisted that as the diocese of Illinois has been divided into three dioceses, the diocese of Chicago could not legally elect said trustees without further legislation or without the concurrent action of the dioceses of Springfield and Quincy. The act of 1849 named certain persons as trustees, and provided that they should hold office "until the next ensuing annual convention of the said Protestant Episcopal Church in the diocese of Illinois and until their successors in office shall be appointed and qualified, at which time, and at every annual convention thereafter, trustees shall be appointed pursuant to such rules, by-laws or canons of said church as may be in force at the time of such appointments, which, however, shall not be repugnant to the constitution and laws of this State or of the United States." There is nothing in the act upon which to base appellant's contention that the concurrent action of the three dioceses of Chicago, Springfield and Quincy is requisite to the valid election of trustees, and no rule, by-law or canon establishing such a requirement is to be found in the record in this case. It must therefore be assumed that the election of trustees by the diocese of Chicago at each annual convention of the church was in accordance with the established rules, by-laws or canons of the church and in compliance with the provisions of the act of 1849 regarding that subject.

We are of the opinion that the acting trustees of said corporation, elected and chosen by the diocese of Chicago, were fully authorized to accept and make convey-

ances for the uses and purposes mentioned in said acts of 1849 and 1861, and that the bishop in the diocese of Chicago, as the successor to the bishop of the diocese of Illinois, was and is fully authorized and empowered to take and hold property for the uses and purposes expressed in the act of 1853, and to convey the same, and that the circuit court correctly decreed a specific performance of said contract.

We find no error in this record. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.