### D. W. C. DAVIDSON *vs.* ISAAC CARSON.

Divers statutes relating to the same subject matter should all be taken into consideration, in construing one of them.

The act of Congress, March 3, 1869, (15 Stat., 339) regulating elections in Washington Territory had the effect of changing the time for the election of county and other officers in said Territory.

The Legislative Assembly possess the power of shortening or lengthening the terms of officers elected solely under the laws of the Territory and much more does Congress possess the same power.

While the repeal of a statute by implication, is not favored, still in so far as it is impossible to reconcile the earlier with the later act, the former is repealed.

A statute must be construed with reference to all its parts, and if practicable, in such a way that the whole may stand.

The terms of officers elected at the general election, of 1869, being for two years, is not changed by the said act of Congress, changing the time for the general election to June, 1870.

Appeal from Third Judicial District, holding terms at Steilacoom.

*Elwood Evans* and *O. B. McFadden* for appellant.

*J. E. Wyche, Frank Clark* and *Irving Ballard* for appellee.

Opinion by Greene, Associate Justice.

D. W. C. Davidson, as appears by the pleadings filed herein, was elected sheriff of Pierce county, at a general election held in Washington Territory in June, 1870, and duly qualified according to law.

Isaac Carson, respondent and appellee, was duly elected sheriff of said county at a general election held in June, 1869, duly qualified according to law, and at the date of the general election in 1870 was, and ever since has been, in possession of the office in dispute.

Davidson, the appellant, claims to be entitled to hold said office by virtue of his election in 1870, and his subsequent qualification according to law.

No dispute arises in relation to the facts.

Under them a *pro forma* judgment was rendered in the Court below in favor of the respondent, Isaac Carson, and the case comes up on appeal, under the provisions of the 447th section, page 120, of the laws of 1869. The questions submitted for our decision are:

1. Was the election held in the Territory of Washington on the first Monday of June, 1870, a lawful general election for all Territorial, district and county officers, including the office of sheriff of said Pierce county?

2.   If said election was a lawful and legal election for said office of sheriff, did the term of the relator, such sheriff elect, commence from and after such election, or, was said term of office to commence from June, 1870, or after the full term of two years, the time respondent was elected to said office of sheriff, viz: at the general election held on the first Monday of June, 1869.

3.   And it is further agreed that the rights of relator and respondent to the office in controversy, shall be determined by the judgment of the said Supreme Court upon the said propositions of law.

I will proceed to examine the first two of the above propositions, so far as they are connected with the case before us.

The general election of June, 1870, was held by virtue of the act of Congress, approved March 3, 1869, 15 statutes at large, page 339, entitled "An act to regulate elections in Washington and Idaho Territories" which is as follows:

"That elections in the Territories of Washington and Idaho for delegates to the House of Representatives of the forty-second Congress, shall be held on the first Monday of June, A. D. 1870, and afterwards biennially on the first Monday of June, and such officers as are elected at the same time with their delegates shall be elected for offices thereafter to be filled, at the time specified, unless otherwise provided by the laws of said Territory."

The case turns on the construction of this statute, and as all laws are presumed to be passed with deliberation, and with full knowledge of the existing one on the same subject, (Sedg. on Stat. and Con. Law, 127; Organic Act of W. T., section 6) it becomes material to enquire what the existing legislation of Washington Territory was, as regards elections, before the passage of the above act.

The act of Congress and the laws of the Territory bearing upon the officers and the offices alluded to in the act, are in *pari materia*, and in construing them, the correct rule of interpretation is that if divers statutes relate to the same thing, they ought

all to be taken into consideration in construing any one of them. Sedg. on Stat. and Con. Law, 247; 3 Howard, 564. By an act approved Jan. 31, 1867, laws of 1867, page 6, the Legislative Assembly provided for biennial elections. Prior to that time, an election had been annually held on the first Monday in June, though the *term* of office of sheriffs had always been for two years. Laws of 1865-6, page 6; laws of 1854, page 434; laws of 1863, page 557. Congress, by act approved June 29, 1866, amendatory of the organic act of Washington Territory (Statutes at Large, vol. 15, page 300), provided for biennial sessions of the Legislative Assembly, and fixed the day of election "for the first biennial session under this act" at the time of holding the general election in the year 1867. The act of the Legislative Assembly, approved Jan. 31, 1867, before referred to, was passed, it is fair to presume, both to conform the legislation of the Territory as regards the election of county, district and precinct officers to the act of Congress, and it may be, to save the expenses of two elections, when one would answer the purpose.

In accordance with the provisions of these laws, a general election was held in 1869, and another in 1867. Had there been no legislation by Congress, the next general election would have been held in 1871, but under the act before recited, a general election, under which the relator claims, was held on the first Monday of June, 1870. There can be no question that Congress intended that "all such officers as are elected at the same time with their delegate" should be elected on the first Monday of June, 1870, "unless otherwise provided by the laws of said Territory." There is no ambiguity here; the words are express, the construction simple and obvious, and the conclusion to be drawn from them unavoidable and irresistable. The words are, omitting those not bearing directly on the time of the election, "such officers as are elected at the same time with their delegates, shall be elected * * * * at the times herein specified unless otherwise provided by the laws of said Territory." These words are amendatory, and express a clear and definite meaning. First in the act is a declaration that the election for delegate to the House of Representatives, shall be held on the first Monday

of June, 1870, and, next, another that such officers as are now elected at the same time with their delegates, shall be elected on the same day, unless otherwise provided by the laws of said Territory. The act consists of but a single sentence, and the same idea of time, so far as regards the point in question, runs through the whole. It is impossible to resist the conclusion that if it be necessary to supply any ellipsis in the clause "unless otherwise provided" etc., it must be filled by the words "shall be."

But, it has been contended that the Legislative Assembly, which met in 1869, did "otherwise provide by law," and an act, entitled "an act to provide for the election of County Commissioners, and defining their duties," laws of 1869, page 303, has been cited as establishing that proposition. That act declares "that there shall be established in each organized county in this Territory, a Board of County Commissioners, to consist of three qualified electors, to be elected by the qualified electors at the general election in 1871, and biennially thereafter," etc., but in no part of the acts passed by the Legislative Assembly of 1869, is there to be found any provision for a general election, nor is any day named on which it is to take place. It would indeed seem by this act, that the Legislative will contemplated other and farther action in the premises, but if so, it never took definite shape, and cannot be enforced in any mode known to the law.

The relator, D. W. C. Davidson, was consequently duly elected sheriff of Pierce County, at the general election held on the first Monday of June, 1870.

The second question remains to be considered.

The Legislative Assembly possesses the power of increasing the terms of all officers, elected solely under the laws of Washington Territory, and the converse of this proposition is equally true. *Bryan vs. Cattell,* 15 Iowa, 553; 5 Cal., 359; *The People vs. The Auditor,* 1 Scammon, 537. If the Legislative Assembly possesses this power, it will be conceded that Congress does, and the question is, has it exercised it so as to abridge respondent's term, and to arrive at a conclusion, the

act of Congress, and the Legislature of Washington Territory on the subject of elections, must be considered together.

The intent to change the election law of the Territory, as regards time, is plain, but no change in relation to the term of the officers to be elected, directly appears in any part of the act of Congress. If respondent's term be abridged, it can only be by implication, and it may be well to consider what is the general rule controlling Courts, where it is claimed there has been a repeal of an act, or a portion of an act, in this manner.

" While it is clearly settled" says Sedgwick, " that Statutes may be repealed by implication, and without any express words, still the leaning of the Courts is against the doctrine if it be possible to reconcile the two acts of the Legislature together." Sedgwick on Stat. and Con. law, page 126.

It is the duty of Courts, then, only to declare one law repealed by another, in a plain case, and never when it is necessary to resort to a constrained construction, arising from the general and ambiguous words of the subsequnt Statute. Sedg. on Stat. and Con. Law, page 127.

The laws of W. T., of 1867, page 7, in the amendment to the election law of 1866, pages 24, *et seq.*, laws of 1866, provide, in section 4, that "the term for which all Territorial, district, county and precinct officers hereafter elected, shall be as follows : * * * all county and precint officers shall each be elected for two years." Here is an express provision, fixing the term of office for which respondent was elected. The only words in the act of Congress, from which the intent to repeal section 4, of the act of the Legislative Assembly of 1867, can be deduced are, "and such officers as are elected at the same time with their delegates, shall be elected for offices thereafter to be filled at the time herein specified," and these words must be construed in construction with the laws of Washington Territory on the same subject. Referring to those laws, and the facts in this case, we find that the office of sheriff was, at the time of the election in 1870, occupied for an unexpired term by Isaac Carson. So far from the intent of Congress being to oust the incumbents of offices already filled, the meaning of the words

"shall be elected for offices thereafter to be filled," may well be held to exclude that idea. The word "thereafter," in its legal sense, is synonymous with subsequently, and the words "thereafter to be filled," that is, filled subsequently to the election, imply the idea of a previous occupation of the offices with which Congress did not wish to interfere. Regarded in any other light, the words in question are superfluous, since the sense would be complete if the act read, "shall be elected at the times herein specified," and stopped there..

It has been contended that the section 36, page 72, election laws of W. T., 1854, is still in force. That section is as follows: "The term of office of all officers elected, shall begin from the time of their election, unless some other express provision is made by law."

I am of opinion that the election law of 1854 is repealed by that approved Jan. 23, 1866, laws of 1866, pages 24, *et seq.*, as amended by the act approved Jan. 31, 1867, laws of 1867, page 6. The law of 1854 comprises two chapters, and forty-nine sections; that of 1866, as amended, ten chapters and one hundred and seventeen sections. Many of the provisions of the law of 1854, are re-enacted in that of 1866, others are wholly irreconcilable with and repugnant to those of 1854, and large additions have been made to it. Each act provides a system of legislation, under which elections could be held; each is complete in itself, and the latter is so contrary to the former that it is plain it was intended to supersede that of 1854. As a whole, the act of 1854 conflicts with that of 1866, and is repealed by section 13, page 53, laws of 1866.

One other point remains to be considered. The 5th section of the act amending the election law of 1866, laws of 1867, page 7, provides that "all Territorial, county and precinct officers who are entitled to be elected at any general election in this Territory, shall be elected at the general election on the first Monday of June, 1867, and shall hold their offices to which they may be elected, until their successors are elected and qualified."

It has been argued that the election of Davidson, under this section, ousted Carson, the incumbent, but the fourth sec-

40

tion before cited term, fixes Carson's term at two years, and both sections are to be construed together. If Congress had intended to make a change in the term of the officers, we would expect to find that intent clearly stated in the act, and it nowhere appears there.

Construing the fourth and fifth sections of the election law, in connection with the act of Congress by the general rule that one part of a Statute must be so construed by another that the whole must, (if possible) stand; *ut res magis valeat quam pereat*, Blackstone, Book 1, page 89, as well as by the rule regulating appeals by implication before alluded to, I am of opinion that the legislation of Congress has made no change in the term of the officers elected at the general election in 1869, and consequently that the respondent, Isaac Carson, is rightfully in possession of his office of sheriff of Pierce county, and entitled to hold the same until the expiration of his term of two years.

The judgment below is therefore affirmed, with costs.