THE PEOPLE OF THE STATE OF NEW YORK ex rel. CALEB W. MITCHELL, Appellant, *v.* CHARLES H. STURGES, Respondent.

*Constitutional law — power of the Legislature to declare an office, to which the incumbent has been elected, vacant, and to provide that it be filled by appointment.*

Under section 3 of article 10 of the Constitution, providing that the duration of any office, not provided for therein, "may be declared by law, and if not so declared such office shall be held during the pleasure of the authority making the appointment," and under sections 5 and 8 of article 10, authorizing the Legislature to declare offices vacant and to provide for filling vacancies in office, the Legislature may enact a statute providing for the election of the president of a village by its board of trustees, instead of by its electors, and declaring the office of president vacant before the expiration of the term of the then present incumbent, chosen under a former act.

The word "elect," as used by the Legislature in section 4 of chapter 247 of the Laws of 1895, amending chapter 220 of the Laws of 1866, is equivalent, in its legal effect, to the word "appointment" as used in the Constitution.

The court will not presume that legislation has been directed against the incumbent of an office and not to the office itself.

APPEAL by the plaintiff, The People of the State of New York ex rel. Caleb W. Mitchell, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 30th day of November, 1897, upon the decision of the court rendered after a trial before the court without a jury dismissing the complaint upon the merits.

The action was in the nature of a quo warranto for the purpose of ousting the defendant from the office of president of the village of Saratoga Springs and declaring the relator entitled thereto.

In March, 1894, the relator, under a statute then in force, was elected for a term of two years to the office of president of the village of Saratoga Springs. He qualified, entered upon and continued to discharge the duties of the office until the first Monday of May, 1895, when the board of trustees of the village, acting in pursuance of and in conformity with section 4 of chapter 247 of the Laws of 1895, amending the charter of the village (Laws of 1866, chap. 220), "elected" the defendant to the same office, and he, to the exclusion of the relator, took and has since retained possession of the office and discharged the duties relating to it.

That portion of the act of 1895, so far as it relates to the ques-

tion here involved, provides that " The board of trustees shall, upon the first Monday in May in the year eighteen hundred and ninety-five, and upon the first Monday in April in each odd-numbered year thereafter, assemble at the place provided for the meetings of the board of trustees in said village, and shall proceed to elect some suitable person * * * to the office of president of the village, and the president so elected shall hold his office for two years and until his successor is duly chosen and qualified. * * * Upon the election of a president of the village pursuant to this section, the terms of office of the present president shall cease and determine."

The relator insists that this statute is void in that it violates certain sections of the Constitution of the State of New York:

(1) That it violates section 1 of article 1, which guarantees that one shall not be deprived of a right or privilege " unless by the law of the land or the judgment of his peers; " (2) that it violates sections 5, 7 and 8 of article 10 in relation to the creation of and filling vacancies in offices, in that it provides for the selection of an incumbent for an office not vacant at the time the selection is made; (3) that it violates section 2 of article 10, which provides that " All city, town and village officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the Legislature shall designate for that purpose."

*Charles Haldane,* for the appellant.

*A. W. Shepherd* and *C. H. Sturges,* for the respondent.

LANDON, J. :

The officer in question is one " whose election or appointment is not provided for by this (the) constitution," and, therefore, he may be elected by the electors of the village or appointed by such authorities thereof as the Legislature shall designate for the purpose. (Const. art. 10, § 2.) The appellant urges that section 4 of the act of 1895, in providing that the board of trustees " shall proceed to *elect*" such officer, violates this section of the Constitution conferring the power of election upon the electors of the village; but it

is evident that, in this case, as in *Sturgis* v. *Spofford* (45 N. Y. 446), the word *elect* was used by the Legislature in the sense of *appoint*. The 7th section of this act, amending section 22 of the village charter, indicates such sense. It says : " The board of trustees shall have power to remove any officer of their *appointment*, except the president of the village."

As the Legislature had the power to provide that the president of the village should be elected by the electors of the village, or appointed by such authorities thereof as they should designate, it had the power to change from one method to the other in its discretion.

Article 10, section 3, of the Constitution declares : " When the duration of any office is not provided by this constitution, it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment." Plainly, " duration of any office " includes the term of the incumbent. The law which declared the term of the incumbent of this office to be two years could be altered so as to shorten the length of the term of any incumbent. (*People ex rel. Williamson* v. *McKinney*, 52 N. Y. 374; *Long* v. *Mayor*, 81 id. 425; *People ex rel. Gere* v. *Whitlock*, 92 id. 191; *Koch* v. *The Mayor*, 152 id. 75.)

This being so, this act, which shortened the term of the relator, but not of his successors, does not seem to be open to the objection that the constitutional provision was violated. Whether it was narrowly or ungenerously and harshly observed, presents no judicial question.

Section 8 of article 10 of the Constitution declares : " The legislature may declare the cases in which any office shall be deemed vacant, when no provision is made for that purpose in this constitution."

Section 5 : " The legislature shall provide for filling vacancies in office."

It is, no doubt, true that these affirmative provisions are the denial to the Legislature of all power over the subject-matter inconsistent with them, and in this sense they are limitations upon the legislative power. But I fail to see how this aids the relator. The Legislature, in the enactment of the statute here challenged, kept strictly within these provisions. It declared (1) when the office should be deemed vacant; (2) how the vacancy should be filled.

The Constitution is silent respecting the order of these events. Since the Legislature kept within the constitutional limitations, we cannot impute to that body an intent to violate the spirit of the Constitution while observing its forms. If we should suppose that some members of the Legislature desired by this statute to take the office away from the relator and give it to the defendant, we would not be justified in imputing that intent to the Legislature itself. In interpreting a statute, we often have recourse to what we term the legislative intent, meaning thereby the intent as gathered from the act itself, and sometimes considered in the light of our knowledge, in common with the public at large, of well-known conditions which may seem to have led up to it. But such consideration of extraneous facts is not resorted to to defeat the act, but to aid in its interpretation, except in cases where personal liberty or private property is sacrificed under a false pretense of protecting the public health or morals, or private property is taken under a false pretense that it is for the public use. In such cases a false declaration in the statute of the purpose for which private rights are invaded is not beyond judicial inquiry. (See *Waterloo Woolen Mfg. Co.* v. *Shanahan*, 128 N. Y. 345.)

In the case last cited the court restated and approved in this respect the doctrine of *People ex rel. Wood* v. *Draper* (15 N. Y. 545), and cited many cases in its support, and reinforced the doctrine by apt and vigorous language of its own. This is the more significant because the latter case was in other respects distinguished, if not discredited, in *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50). Judge DENIO in the *Draper* case said: " If a particular act of legislation does not conflict with any of the limitations or restraints which have been referred to, it is not in the power of the courts to arrest its execution, however unwise its provisions may be, or whatever the motives may have been which led to its enactment. There is room for much bad legislation and misgovernment within the pale of the Constitution, but whenever this happens, the remedy which the Constitution provides by the opportunity for frequent renewals of the legislative bodies is far more efficacious than any which can be afforded by the judiciary. The courts cannot impute to the Legislature any other than public motives for their acts. If a given act of legislation is not forbidden by express words or by necessary implication, the

judges cannot listen to a suggestion that the professed motives for passing it are not the real ones.   If the act can be upheld upon any views of necessity or public expediency which the Legislature may have entertained, the law cannot be challenged in the courts."

It may be remarked of *People ex rel. Bolton* v. *Albertson (supra)* that it took from the electors, or the authorities of the city of Troy, the power to elect or appoint the commissioners of police for that city, and vested the power of appointment in the Governor.   Here the act simply substitutes appointment by one of the authorities of the village in place of the election by the electors thereof.   There the mandate of article 10, section 2, of the Constitution, was evaded; here it is observed.

We must assume that the Legislature, in the enactment of this statute, deemed it wise and right to change the statute which made the president of the village of Saratoga Springs elective by the electors of the village, and to replace it by a statute which should vest his appointment in the board of trustees of the village; also, that the Legislature deemed it wise and right that the term of the elected president should end with the assumption of the office by the appointed president.

To assume that the Legislature intended to abuse its powers to the oppression and injury of the relator would, in this case, be, I think, a gratuitous aspersion of that co-ordinate and independent department of the government.   If we go outside of the act itself, and the act which it amends, as far as we lawfully can, in search for light upon the intent of the act, we shall find none.

This brings us to the main point of the relator's argument.   It is based upon the assumption that the statute — section 4, chapter 247, Laws of 1895, above quoted — under which his term of office was shortened and himself displaced from the office of president of the village and the defendant elected or appointed in his stead, was directed against him, and not toward a change in the office itself, and hence that the Legislature exceeded its powers, either by assuming a judicial function, that is, of rendering judgment of ouster against him, or by depriving him of due process of law, by which only such judgment could be pronounced.   The preceding discussion answers this contention.   We cannot assume that the legislation was directed against the officer, and not to the office.   The relator

had the right to hold the office of president of the village for the two years for which he was elected to it by the electors — no other cause for its earlier termination or vacation existing — unless the Legislature should, by statute, shorten the term for which he was elected. This the Legislature had the right to do, and did do, by the act in question. His term of office, therefore, ceased when the defendant's term began. The Legislature exercised legislative, and not judicial power; it deprived the relator of no right, since his right to remain in the office was dependent upon the exercise of the legislative power to shorten the term; and since the term of the office was thus shortened, due process of law could not be invoked to prolong it, or to protect the relator's right to it from expiring.

The judgment should be affirmed, with costs.

All concurred, except HERRICK, J., not voting.

Judgment affirmed, with costs.